GRAHAM v. BOARD OF SUPERVISORS OF MANISTEE COUNTY.

1. INTOXICATING LIQUORS—TIME—AFFIDAVITS.

Between the date of the posting of the petition for a local option election and the affidavit showing the same a period of ten days was sufficient, including either the day of posting or the date of filing with the county clerk. 2 Comp. Laws, § 5415 (2 Comp. Laws 1915, § 7083).[1]

2. SAME—POLL LISTS—STATUTES—EVIDENCE.

After a poll list is filed with the county clerk, it becomes a public record and is proof of the facts stated or contained in it: the clerk may consult it of his own motion. 1 Comp. Laws, § 3661 (1 Comp. Laws 1915, § 3729).

3. SAME—LOCAL OPTION—PETITIONS.

The sufficiency of petitions to submit the question of county prohibition, under 2 Comp. Laws, §§ 5414-5417 (2 Comp. Laws 1915, §§ 7082-7085), depends on the number of electors as shown by transcripts of the poll lists that accompany them, or, if they are not filed together, the county clerk or board of supervisors may consult the lists to determine whether or not a sufficient number of electors have signed the petitions.

[1]The rules as to first and last days in computing time are discussed in notes in 49 L. R. A. 193, 15 L. R. A. (N. S.) 686.

4. SAME—NUMBER OF PETITIONERS.

The statute does not require the clerk or board to compare each petition with the poll list of the corresponding voting precinct, but the petitions suffice if the total number of signers equal one-third of the number of qualified electors as evidenced by the returns or county canvass of the vote at the last general election, or by the certified transcripts accompanying the petitions.

5. SAME.

And, *held,* on certiorari, to review mandamus proceedings in which the lower court denied the writ to compel the board to reconvene and determine the sufficiency of the petitions, that the duty of the board was clear and the writ should issue to compel performance thereof.

KUHN, BIRD, and BROOKE, JJ., dissenting.

Certiorari to Manistee; Withey, J.  Submitted January 24, 1916.  (Calendar No. 27,098.)  Decided February 23, 1916.

Mandamus by William J. Graham against the Board of Supervisors of Manistee County to compel respondent to reconvene and to submit the question to vote of the qualified electors of said county as to whether the manufacture of liquors and the liquor traffic should be prohibited within said county.  An order denying the writ is reviewed by relator on certiorari.  Reversed.

*Edwin Rawden,* for relator.

*Howard L. Campbell,* for respondent.

BROOKE, J. (*dissenting*).  This is certiorari to mandamus.  Certain qualified electors of the county of Manistee filed petitions with the county clerk of said county asking for the submission of the prohibition question to the electors of said county.  The county clerk, as was his duty under the statute, reported the facts to the board of supervisors.  From his report it appears:

(1) The total number of signatures attached to the several petitions was 1,390.

(2) The affidavit as to the genuineness of 26 of the signatures to one of said petitions was taken before an official not authorized to administer oaths in Michigan.

(3) That the other 1,364 signatures were verified according to statute.

(4) The total number of qualified electors in the county of Manistee as appears by the poll lists at the last general election held on the 3d day of November, 1914, was 4,096.

(5) The total number of votes cast for governor at the last general election, held on the 3d day of November, 1914, as appears by the return of the board of canvassers, was 4,026.

Using the number of qualified electors as determined by the poll lists as the dividend, and 3 as the divisor, we arrive at a quotient of 1,365 1/3. If we use a dividend of 4,026, the number of votes cast in said county according to the returns of the board of county canvassers for governor, the quotient would be 1,342. By the first method of computation the number of petitioners would be found to be too few, and by the second method the number would be in excess of the statutory requirement.

The statutory affidavits accompanying the petitions, as filed with the county clerk, were all made 10 days after the posting, if either the day of posting or the day upon which the affidavit was made was included. The board of supervisors refused to make an order of submission. Application for mandamus was thereupon made to the circuit court for the county of Manistee, and the learned circuit judge determined that the verifying affidavits showed upon their face that the time elapsing between the posting of the petitions and making of the affidavits was insufficient, and therefore refused to issue the writ. In this holding the court was in error. The matter has been recently carefully

considered by this court. *Ehinger* v. *Graham, ante,* 132 (155 N. W. 747), where a contrary conclusion was reached..

The question still remains, however, whether the board of supervisors has legally refused to submit the question upon the ground that a sufficient number of qualified electors had not signed the petitions. The controlling statutory provisions are as follows:

2 Comp. Laws, § 5414 (2 Comp. Laws 1915, § 7082): "In order to ascertain the will of the qualified electors of each organized county, in regard to such prohibition, it shall be the duty of the county clerk of the counties of this State, severally, upon written application and petition filed with him and addressed to the board of supervisors of the county, signed by not less than one-fourth [now one-third] of all the qualified electors thereof, as shown by the poll lists or returns and canvass of the last preceding general election for State officers. * * *"

2 Comp. Laws, § 5415 (2 Comp. Laws 1915, § 7083): "To enable the county clerk to ascertain that the petitioners thus praying for such an election are qualified electors of such county, and that they constitute at least one-fourth [now one-third] of all the electors of such county, as shown by the poll list or the returns and canvass of the last preceding general election * * * *Provided,* however, that, if for any reason a certified transcript of any poll list shall not have been procured, or if such transcript shall be defective, it shall be sufficient if the whole number of all the petitioners is equal to one-fourth [now one-third] of the number of all the qualified electors of such county, as shown by the returns or county canvass of the last preceding general election."

2 Comp. Laws, § 5416 (2 Comp. Laws 1915, § 7084): "When such petitions shall have been presented to the county clerk he shall file the same in his office, and when it shall appear upon the face thereof, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by not less than one-

fourth [now one-third] of all the qualified electors of the entire county, shown as aforesaid.    *    *    *"

A reading of all of these statutory provisions leads to the conclusion that the basic fact for determination is that the petitions have been signed by *one-third of the qualified electors of the county*. That fact is to be determined primarily from transcripts of the poll lists, and secondarily by reference to the returns and canvass of the last general election.

The proviso contained in section 5415, *supra*, shows that if for any reason certified transcripts of any poll lists shall not have been procured, or if such transcript shall be defective, recourse may then be had to the returns or county canvass of the last preceding general election. In the case at bar the communication of the county clerk to the board of supervisors clearly shows that the poll lists of November 3, 1914, were available, and that a computation could be made therefrom. It further shows that by a computation made therefrom a sufficient number of qualified electors had not signed the petition. We do not think it was the intention of the legislature to permit the board of supervisors at its will to select either the poll lists or returns and canvass of the last general election as a basis for determining whether or not the requisite number of qualified electors signed the petition. It is only in the event of the failure to procure a certified transcript of the poll lists, or if such transcript shall be defective, that the computation may lawfully be made from the returns or county canvass of the last preceding general election. In the case at bar it does not appear either that the certificate of the transcript of the poll lists was not procured, or that it was defective. We must therefore hold that the board of supervisors properly refused to order the question to be submitted.

It appearing that the learned circuit judge made a

proper order in the case, the judgment should therefore be affirmed.

KUHN and BIRD, JJ., concurred with BROOKE, J.

OSTRANDER, J.   The record shows affirmatively, I think, that petitioners did not procure and present poll lists to the clerk, and that the clerk of his own motion consulted the poll lists.   This he easily might do, in most cases, because it is the law that one of the poll lists from each voting precinct shall be filed with and preserved by the county clerk.   1 How. Stat. (2d Ed.) § 249; 1 Comp. Laws, § 3661 (1 Comp. Laws 1915, § 3729).   When so filed, a poll list is a public record admissible in evidence of the facts therein stated.   *Attorney General* v. *May,* 97 Mich. 568, 574 (56 N. W. 1035).

Should the county clerk, and should the board of supervisors, in all cases where the poll lists are available, and are not defective, consult them and determine by them whether a sufficient number of electors have signed the petitions?   This is a question not determined in the circuit court and not before this time presented to this court.   In practice this question has heretofore—uniformly, I think—been answered in the negative.   It must now be answered as proper construction of the statute requires.

There is no such thing as a county poll list.   There is a poll list for each voting precinct in the county. Petitions under the statute in question here come from precincts, wards, townships, and each must be separate and distinct from those of any other township, ward, or election district.   One of the many petitions presented to the clerk may have a poll list attached (procured) ; that is, a poll list of the voters in the voting precinct.   One-half of the petitions may be accompanied by poll lists.   With some petitions no poll lists may be filed.   If one from each precinct is procured

and filed, the total number of voters as shown by the poll lists is to be used for purposes of comparison. If *for any reason* a certified copy of *any* poll list shall not have been procured or shall be defective, then it shall be sufficient *if the whole* number of *all* the petitioners is equal to one-third the number of *all* the qualified electors as shown by the returns or county canvass. This is the express language of the proviso, the terms of which qualify the provisions of section 5415.

It is the duty of the county clerk to lay before the supervisors—

"the petitions filed in his office praying for such election, and when, upon examination, it shall appear to said board, upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determination shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same." Section 5417.

The legislature has not placed upon the clerk or the board of supervisors the duty to compare each petition —from each voting precinct—with the poll list of that precinct preserved in the office of the county clerk, and, if not found there, then with the poll list preserved in the voting precinct. It has not said that poll lists shall be used for comparison if poll lists are *procurable*. The inquiry is limited, the investigation confined—

"to ascertaining from a comparison of the number of names on the petition with the number on the records mentioned in the statute." *Kern* v. *Board of Supervisors*, 160 Mich. 11 (124 N. W. 941).

See, also, *Rutledge* v. *Board of Supervisors*, 160 Mich. 22 (124 N. W. 945).

The *records* mentioned in the statute are the *tran-*

*scripts* of the poll lists and the returns and canvass of
votes. The legislature seems to have considered that
to secure the referendum in such cases substantially
one-third of the qualified electors of the county shall
demand it; it being *sufficient* in *all* cases where poll
lists from *all* voting precincts do not *accompany* the
petitions if the total number of petitioners equals one-
third the number of qualified electors as shown by
the returns or county canvass of the vote at the last
general election.

In my opinion, this is the construction which must
necessarily be given to the law; all of its provisions,
and its purpose, being considered. It is the construc-
tion which is supported by what the legislature did
not say as well as by what appears in the act. It would
have been a simple thing to provide that the clerk and
board should consult the poll lists on file in the office
of the clerk. But the law speaks only of poll lists (tran-
scripts) accompanying the petitions. It is the con-
struction which the law has uniformly received. Courts
ought to accept *as sufficient* what the legislature has
said is *sufficient*.

I agree with Mr. Justice BROOKE that the court be-
low wrongly decided the point upon which the judg-
ment rests. I disagree with him in the conclusion that
the decision may be for other reasons sustained. The
court should have reached a different conclusion, and
should have issued the writ. As the duty of the board
appears to be plain and the board adjourned without
performing it, the writ must now issue directing the
board to reconvene and make the required and neces-
sary determination.

STONE, C. J., and MOORE, STEERE, and PERSON, JJ.,
concurred with OSTRANDER, J.